UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIKEL POMO BERMUDEZ,<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION CENTER, *et al*.<br>Respondents. | Case No. 1:26-cv-07310 (VC)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

Petitioner Maikel Pomo Bermudez is a noncitizen detainee proceeding with a petition for writ of habeas corpus arguing that his order of supervision ("OSUP") was unlawfully revoked, and that his detention has become unconstitutionally prolonged per *Zadvydas v. Davis*. *See* Dkt. No. 1 at 6–7. For the reasons that follow, the Court GRANTS Petitioner's *Zadvydas* claim, and orders his release. As Petitioner's *Zadvydas* claim provides him with complete relief, the Court does not consider Petitioner's claim regarding the revocation of his OSUP.

This is an uncomfortable result given Petitioner's criminal record, but it is required by law. The ruling is stayed for 14 days to give Respondents the opportunity to return Petitioner to the custody of local law enforcement if appropriate, as it appears that local law enforcement transferred Petitioner to the custody of Respondents after arresting him on several crimes.

## I. BACKGROUND

Petitioner was ordered removed to Cuba in November 2020 and was detained by immigration authorities for several months to effectuate that removal. *See* Dkt. No. 1 at 2; Dkt. No. 8-4 at 1–2. The Government was unable to remove him at that time, and he was released on

an OSUP sometime in 2020. Dkt. No. 1 at 2; Dkt. No. 8-2 at 1. Between his release and his recent re-detention Petitioner has been convicted of several criminal offenses, with his most recent arrest occurring in May 2025 for possession and selling of a controlled substance. Dkt. No. 8-1 at 2–3. He was re-detained by ICE in February 2026 following his release from Hillsborough County jail. *Id*. at 2.

Petitioner was served with a "Notice of Revocation of Release" on the day of his arrest. *See* Dkt. No. 8-2 at 1–2. The notice states that Petitioner's release was being revoked, in part, because he violated a condition of his release. *Id*. at 1. He was provided with an informal interview at which he was provided an opportunity to respond to the reasons for revocation of his OSUP that same day. *Id*. at 3. Petitioner was also served with a notice informing him that he was to be removed to Mexico. *Id*. at 4. Petitioner has not consented to his removal to Mexico since receiving the notice. He has now been detained for nearly eight months.

## II. DISCUSSION

Respondents claim that Petitioner's continued detention is lawful under 8 U.S.C. § 1231(a)(6) as they remain ready to remove him to Mexico. Dkt. No. 8 at 2–3. However, they acknowledge that the standing agreement between the United States and Mexico is contingent upon the non-citizens' consent to be removed to Mexico, which Petitioner has not provided. *Id*. at 3; *see also Ruiz-Acosta v. Cent. Valley Annex*, No. 1:26-CV-04371-DAD-JDP (HC), 2026 WL 1846727, at *3 (E.D. Cal. June 26, 2026). In response, Petitioner argues that his removal to both Cuba and Mexico is not reasonably foreseeable, and release under *Zadvydas v. Davis* is warranted. *See* Dkt. No. 9 at 7–10. The Court agrees.

Section 1231(a)(6) authorizes detention beyond the typical 90-day removal period during which an individual must be detained. 8 U.S.C. § 1231(a)(6) (explaining that, under certain circumstances, an alien "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)"). However, § 1231(a)(6) allows detention beyond this 90-day window only for "a period *reasonably necessary* to bring about that [noncitizen]'s removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

"The presumptive ceiling for this detention is six months, after which, 'once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.'" *Arias Garcia v. Warden*, No. 1:26-CV-04659-DJC-JDP, 2026 WL 2254380, at *1 (E.D. Cal. Aug. 4, 2026) (quoting *Zadvydas*, 533 U.S. at 689).

Petitioner has met his initial burden under this test. He has been detained well past the six-month presumptive period. *See* Dkt. No. 1 at 2 (stating that detention began in February 2026). The fact that the Government was unable to remove Petitioner to Cuba when he was first detained in 2020, and that they have made no attempt to remove him there since re-detaining him in February 2026, demonstrates that removal to Cuba is not likely. And the fact that Petitioner does not consent to his removal to Mexico demonstrates that removal to there is also not likely. "Indeed, district courts have repeatedly found that similarly situated petitioners—Cuban nationals whom the Government is attempting to remove to Mexico against their will—have met their initial burden [under *Zadvydas*], especially because the current standing agreement with Mexico appears to be conditioned on the consent of the noncitizen." *Arias Garcia*, 2026 WL 2254380, at *2 (collecting cases); *see also Sanchez v. Bondi*, No. C25-2573-KKE, 2026 WL 160882, at *3 (W.D. Wash. Jan. 21, 2026) (finding removal to Mexico not reasonably foreseeable where "Mexico's acceptance [of him] may be contingent on [his] consent, which [Petitioner] is unwilling to provide.") (internal quotations omitted); *Rodriguez-Fernandez v. Bondi*, No. 2:26-CV-00170-TMC, 2026 WL 445562, at *3–4 (W.D. Wash. Feb. 17, 2026) (same).

Respondents attempt to rebut this showing by arguing that the only barrier to Petitioner's removal is his refusal to consent to deportation to Mexico. Dkt. No. 8 at 3. This Court and others have rejected this argument multiple times over, and the Court does the same here. *See, e.g.*, *Palacio Jarquin v. Warden, California City Immigr. Processing Ctr.*, No. 1:26-CV-05913 (VC), 2026 WL 2416007, at *2 (E.D. Cal. Aug. 18, 2026); *Gaceran-Jimenez v. Marin*, No. 5:26-CV-01973-BFM, 2026 WL 226217, at *4 (C.D. Cal. Aug. 5, 2026). "To adopt the Government's

position on the use of detention to strong-arm third-country removals [which require the consent of the noncitizen,] would not only undermine the consent required in those removals but also sanction the use of detention to coerce otherwise unavailable deportations." *Arias Garcias*, 2026 WL 2254380, at *3.

As Respondents have not presented any other arguments to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future, Petitioner is entitled to release.

## III. CONCLUSION AND ORDER

For the foregoing reasons, the Petition for Writ of Habeas Corpus is GRANTED. The Court ORDERS Respondent to release Petitioner from detention on appropriate conditions of supervision, in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5. As discussed earlier, this order is stayed for 14 days to give Respondents the opportunity to explore whether Petitioner should be returned to the custody of local law enforcement.

**IT IS SO ORDERED.**

Dated: November 10, 2026

VINCE CHHABRIA
United States District Judge